IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STAES OF AMERICA,<br><br>        Plaintiff,<br>v.<br><br>ISIDRIO ONTIVEROS-MANCILLAS,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS<br><br>Case No. 2:14-CR-00619-DN<br><br>District Judge David Nuffer |

Defendant Isidrio Ontiveros-Mancillas filed a Motion[1] to suppress ("Motion"), arguing that his statements should be suppressed because he did not knowingly or voluntarily waive his *Miranda* rights. An evidentiary hearing was held on April 13, 2015. After a thorough review and consideration of the Motion, the draft decisions[2] and exhibits submitted by the Government,[3] the Motion to Suppress is DENIED.

## FINDINGS OF FACTS

On September 18, 2014, the Uintah Basin Narcotics Strike Force executed a search warrant on Defendant's residence.[4] The search warrant was issued during the course of an investigation into the Defendant's alleged drug dealing activities as well as his possession of firearms by a person illegally or unlawfully present in the United States.[5] Upon securing the

---

[1] Motion to Suppress Pursuant to the Fifth Amendment & Request for Suppression Hearing, docket no. 19, filed March 6, 2015.

[2] Plaintiff's proposed draft decision, docket no. 29, filed May 13, 2015; Defendant's proposed draft decision, docket no. 31, filed June 2, 2015.

[3] Exhibit and Witness List, docket no. 26, filed April 13, 2015.

[4] Motion to Suppress Transcript ("Transcript") 8:9-12, docket no. 26, filed April 13, 2015.

[5] *Id.* 7:20-8:8.

premises, law enforcement intended to question the Defendant at his residence.[6] However, because of the Defendant's need to use the restroom, law enforcement decided to transport the Defendant to the Uintah County Jail where he would first be able to use the facilities and then could be questioned by law enforcement.[7]

Before beginning the interrogation at a little past 10:00 pm,[8] Detective ("Det.") Watt of the Vernal Police Department turned on his body camera, recording the entire interrogation in Gov. Exhibit 1 and audio.[9] The interrogation was conducted in an open room off to the side of the main booking area in the jail.[10] Only the Defendant, Det. Watt, and F.B.I. Special Agent ("S.A.") Ryan were present throughout the interrogation.[11] After Det. Watt activated the camera, he told S.A. Ryan of the F.B.I. to begin the interrogation.[12] S.A. Ryan started by informing the Defendant in Spanish of his *Miranda* rights.[13] This was done by reading from "FBI Form FD-395.15 (Rev. 8-16-95) (Spanish),"[14] the Spanish translation of the F.B.I.'s Advice of Rights form.[15] The specific language of the English and Spanish versions of the F.B.I.'s Advice of Rights form differs somewhat.[16]

---

[6] *Id.* 8:19-9:8.

[7] *Id.* 9:3-12.

[8] Verbatim Translation of Defendant's Interview, Gov. Exhibit 2 at 1, docket no. 26, filed April 13, 2015; Transcript 9:13-16.

[9] Transcript 10:15-18; 70:22-71:7.

[10] *Id.* 9:22-10:10.

[11] *Id.* 9:17-21.

[12] Video and Audio of Defendant's Interview, Gov. Exhibit 1 at minute 0:22-0:29, docket no. 26, filed April 13, 2015.

[13] Transcript 15:3-5.

[14] *Id.* 19:19-23.

[15] *Id.* 21:5-11.

[16] *Id.* 61:2–64:12.

While advising the Defendant of his rights, S.A. Ryan told the Defendant, "If you have any questions about any of your rights, I want you to—to ask me, OK?"[17] In response, Defendant nodded affirmatively.[18] Among the several rights S.A. Ryan discussed with the Defendant was the Defendant's right to an attorney.[19] Specifically, S.A. Ryan informed the Defendant that he had the right to an attorney before the questioning; the right to an attorney during questioning; and that if the Defendant could not afford an attorney, one would be assigned to him before the interrogation.[20] S.A. Ryan then asked Defendant: "Do you have questions about any of those rights?"[21] Defendant responded: "Well, yes. The – the lawyer – the lawyer has to be present, doesn't he?"[22] S.A. Ryan answered: "You can have a lawyer present. You don't have to have a lawyer present, but you can. If you want a law – a lawyer --"[23] Defendant then stated: "I don't have anything to pay for a lawyer."[24] S.A. Ryan responded: "OK. Like I said, if you want – if you can't pay for a lawyer, one will be provided to you prior to starting – starting the interview. OK? So – so then, if you don't have the money to pay for one, uh, you can – the – the judge will assign a lawyer to represent you. OK? Do you understand that?"[25] Defendant nodded in the affirmative.[26] S.A. Ryan reiterated his previous statement: "OK. So,

---

[17] Gov. Exhibit 2, 1; Gov. Exhibit 1 at minute 0:56-1:03.

[18] Gov. Exhibit 1 at minute 0:56-1:03; Gov. Exhibit 2 at 2, 3, and 26; Transcript 35:23-39:19, 41:16-42:6.

[19] Transcript 15:21-16:19.

[20] Gov. Exhibit 2 at 2.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

you don't – don't have to pay for one."[27] S.A. Ryan further stated: "If you are willing to talk to us right now, you don't have to answer all of the questions that – that we ask you. OK? In – OK, so then, do you understand everything?"[28] Defendant responded: "Yes."[29] S.A. Ryan asked Defendant whether he had any other questions about his rights.[30] Defendant responded: "Well, no."[31] S.A. Ryan then proceeded to ask whether Defendant was willing to talk to them.[32] Defendant stated: "Well –uh, it depends on the questions."[33] S.A. Ryan again reiterated to Defendant that he did not have to answer certain questions if he does not want to.[34] S.A. Ryan asked defendant whether he was willing to talk to them.[35] Defendant nodded affirmatively.[36]

    S.A. Ryan then asked if Defendant could read Spanish.[37] Defendant answered "Yes".[38] S.A. Ryan does not know whether Defendant's answer that he reads Spanish is a true statement.[39] After Defendant answered yes to whether he could read Spanish, S.A. Ryan gave Defendant the Spanish language F.B.I. form he had been reading, and stated: "OK. You can read it, if you want, or if you're willing to talk to us, I would like you to – to sign down here. OK?"[40] The form covered the same information about the Defendant's various rights to counsel as

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 3.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] Transcript 49:23-24.
[40] Gov. Exhibit 2 at 3.

discussed with S.A. Ryan.[41] Additionally, at the bottom of the form is a paragraph in Spanish—which text S.A. Ryan did not read aloud to Defendant—that translates as the following:

> I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present. I am conscious of what I am doing. No one has made any promises or threats and no one has pressured me or forced me.[42]

Defendant appeared to be reading the form before placing it next to him on the table and stating "OK."[43] S.A. Ryan asked whether Defendant was willing to talk to them, to which Defendant replied "Yes."[44] S.A. Ryan asked Defendant to sign the document.[45] After Defendant signed the form, Det. Watt began asking Defendant questions through S.A. Ryan, who acted as interpreter.[46]

Approximately 20 minutes into the interrogation, Defendant interjected to state that he had a question: "Is it going to be used against me more so if I'm talking about this without the lawyer or – or – or is it the same?"[47] S.A. Ryan stated he did not understand the question.[48] Defendant restated his question: "Will I be more guilty talking about this without the lawyer or – or do I need to wait for the lawyer?"[49] S.A. Ryan responded: "You can have a lawyer if you want. OK? Like I told you, we don't want you to lie."[50] About three minutes later, Det. Watt,

---

[41] Compare Gov. Exhibit 3A (Spanish Translated *Miranda* Form) with Gov. Exhibit 3B. (English *Miranda* Form), docket no. 26, filed April 13, 2015.

[42] Transcript 64:4-5; 61:3-64:3. Gov. Exhibit 3B.

[43] Gov. Exhibit 1 at minute 3:54-4:46; Gov. Exhibit 2 at 4.

[44] Gov. Exhibit 2 at 3.

[45] *Id.*

[46] Transcript 22:12-15.

[47] Gov. Exhibit 2 at 26.

[48] *Id.*

[49] *Id.*

[50] *Id.*

using S.A. Ryan as his interpreter, asked Defendant who he got the drugs from.[51] Defendant declined to answer that specific question.[52] Questioning continued for approximately another five minutes before ending.[53]

## CONCLUSIONS OF LAW

Defendant has raised two issues in his Motion: (1) whether or not he voluntarily, knowingly, and intelligently waived his *Miranda* rights; and (2) whether he clearly and unambiguously invoked his right to counsel. Each issue is address below.

### A. Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.

Under *Miranda*, law enforcement officers must advise a suspect who is interrogated while in custody that the suspect has, among other rights, the right to counsel and the right to have counsel appointed.[54] A waiver of these rights must be made "voluntarily, knowingly, and intelligently."[55] Whether this standard is met 'depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."[56] The government must show by a preponderance of the evidence that a waiver was valid.[57] A totality of the circumstances approach is used in assessing whether a waiver of rights was made voluntarily, knowingly and intelligently.[58]

---

[51] *Id.* at 28.

[52] *Id.* at 29.

[53] Gov. Exhibit 1 at minute 31:46.

[54] *Miranda v. Arizona*, 384 U.S. 436, 467–468 (1966).

[55] *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002) (quoting *Miranda*, 382 U.S. at 444).

[56] *Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)).

[57] *Morris,* 287 at 988.

[58] *United States v. Burson*, 531 F.3d 1254, 1256–57 (10th Cir. 2008).

The preponderance of the evidence demonstrates that Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. Defendant was provided a translator and conversed in his native tongue of Spanish. Defendant takes issue with the fact that Spanish is not S.A. Ryan's native language and that "on occasion" he "had trouble understanding" Defendant because of the dialect of Spanish Defendant spoke.[59] However, it is clear from the 30 minute dialogue that Defendant could clearly understand S.A. Ryan's questions as Defendant regularly offered appropriate responses to S.A. Ryan's questions. The occasions where S.A. Ryan had trouble understanding Defendant were quickly resolved through follow up questions. No evidence was presented that there was any failure by Defendant to understand what was being communicated to him in Spanish by S.A. Ryan. Defendant also argues that there are several translation inaccuracies within the record—a few found in the *Miranda* form and others in the translated interview transcript. Defendant provides his own translations.[60] However, no adequate record has been laid for the translations provided by Defendant. Such refined arguments regarding the translation of the interrogation and the *Miranda* form must be introduced through expert testimony. No such expert testimony has been given.

With respect to S.A. Ryan's advising the Defendant of his *Miranda* rights, it is clear that Defendant had a sufficient understanding to ask several follow up questions concerning specific rights.  He asked if an attorney had to be present.  He commented that he could not afford one.  In each instant, S.A. Ryan repeatedly reminded Defendant that if he wished to have an attorney present at the interview, he could have one even if he could not afford one.  Each time when S.A. Ryan asked if the Defendant understood, Defendant replied in the affirmative.

---

[59] Transcript at 58:18-24.

[60] *See* Defendant's proposed draft decision at 6, n. 42, and 8, nn. 48–49.

Additionally, after answering that he could read in Spanish, Defendant was given the actual *Miranda* form to review, which he took approximately one minute to read. After reading the document, he was asked by S.A. Ryan whether he still agreed to answer Det. Watt's questions. Defendant said yes and then signed the waiver form. Defendant appeared alert and engaged throughout this critical period of the discussion. No evidence has been presented of a handicap, limitation, or other impairment that would vitiate the voluntary, knowing, or intelligent waiver of Defendant's *Miranda* rights.

### B. Defendant failed to invoke his right to counsel in a clear and unambiguous statement.

Although a suspect may waive his *Miranda* rights, law enforcement questioning must stop at any time the suspect requests an attorney during the custodial interrogation.[61] Questioning may only resume when: a lawyer is provided for the suspect or the suspect reinitiates contact with law enforcement.[62] A suspect only invokes his right to counsel by articulating his "desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."[63] Questioning by law enforcement officers does not need to cease upon ambiguous or equivocal statements made by a suspect that reference an attorney when a reasonable officer "in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel."[64] Additionally, "when a suspect's request is ambiguous or equivocal, law enforcement

---

[61] *Edwards*, 451 U.S. at 484–85.

[62] *Id.*

[63] *Davis v. United States*, 512 U.S. 452, 458-59 (1994).

[64] *Id.* (emphasis in original).

8

officers are not constitutionally required to clarify that statement, though it may be 'good police practice' to do so."[65]

The Tenth Circuit has held that "these principles indicate that statements contemplating the invocation of the right to counsel are not sufficient to actually invoke the right of counsel."[66] Examples cited by the Tenth Circuit in *U.S. v. Sierra-Estrada* of statements made by suspects during a custodial interrogation which failed to trigger the suspect's right to counsel include the following:

- "I wonder if I could have a lawyer. Is it possible if I don't have money?";[67]
- "I can't afford a lawyer but is there anyway I can get one?";[68]
- "Maybe I should talk to a lawyer";[69]
- "I think I want a lawyer";[70] and
- "What time will I see a lawyer?"[71]

Instead, the Tenth Circuit has held that for a suspect to invoke the right to counsel, her statement must include "the clear implication of a present desire to consult with counsel."[72]

The evidence shows that Defendant failed to clearly and unambiguously invoke his right to counsel. Defendant's questions and comments merely seek clarification of his rights. He did not invoke the right to counsel in a way that a reasonable law enforcement officer would

---

[65] *United States v. Sierra-Estrada*, 248 Fed.Appx. 973, 981 (quoting *Davis*, 512 U.S. at 461).

[66] *Sierra-Estrada*, 248 Fed.Appx. at 981.

[67] *Id.*

[68] *Lord v. Duckworth*, 29 F.3d 1216, 1220–21 (7th Cir. 1994)

[69] *United States v. Zamora*, 222 F.3d 756, 765–66 (10th Cir. 2000).

[70] *Diaz v. Senkowski*, 76 F.3d 61, 63–65 (2d Cir. 1996).

[71] *United States v. Doe*, 170 F.3d 1162, 1166 (9th Cir. 1999).

[72] *Sierra-Estrada*, 248 Fed.Appx at 981 (quoting *Duckworth*, 29 F.3d at 1221 (7th Cir. 1994)).

understand as a request for an attorney. Defendant's questions and statements are very similar to the Tenth Circuit examples of failures to invoke the right to counsel.

Because Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights and failed to invoke his right to counsel in a clear and unambiguous statement, the Defendant's Motion[73] to Suppress is DENIED.

Dated June 17, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[73] Docket no. 19.